IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROSA COLQUITT,                                    3:15-CV-00807-BR

          Plaintiff,                              OPINION AND ORDER

v.

MANUFACTURERS AND TRADERS
TRUST COMPANY (a Foreign
Business Corporation) doing
business as M&T BANK,

          Defendant.


JACOB D. BRAUNSTEIN
Clarke Balcom, PC
1312 S.W. 16th Avenue
2nd Floor
Portland, OR 97201
(503) 224-5950

          Attorneys for Plaintiff

DAVID J. ELKANICH
NELLIE Q. BARNARD
Holland & Knight, LLP
2300 US Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
(503) 243-2300

          Attorneys for Defendant

**BROWN, Judge.**

This matter comes before the Court on Defendant Manufacturers and Traders Trust Company's Motion (#8) to Dismiss Plaintiff's Second Amended Complaint.  For the reasons that follow, the Court **GRANTS** Defendant's Motion.


**BACKGROUND**

The following facts are taken from Plaintiff's Second Amended Complaint.

In 2006 Plaintiff Rosa Colquitt refinanced her home with a loan from Defendant with an interest rate of 7.5% "for the life of the loan."  Plaintiff alleges Defendant advised her at the time she entered into the 2006 loan that she would be entitled to receive a modification of the loan to a lower interest rate if she made timely payments for two years.

Plaintiff made timely payments on the loan for two years. Plaintiff subsequently submitted applications for loan modifications to Defendant seven times between January 2009 and September 2014, and "for all but one, Defendant denied [Plaintiff's] applications."  Second Am. Compl. at ¶ 17.  The allegations in Plaintiff's Second Amended Complaint, however, are unclear on this point:  In ¶ 16 of her Complaint Plaintiff asserts she "never received a loan modification"; in ¶ 17, however, Plaintiff indicates she received a modification; and in

¶ 18 Plaintiff alleges her interest rate was temporarily lowered between April 2010 and April 2013.  In any event, in the parties' briefs related to Defendant's Motion they agree Plaintiff received one loan modification in 2010 that lowered Plaintiff's interest rate for three years.

In early 2013 Plaintiff

> had a [tele]phone conversation with an M&T Bank
> representative about her loan and the status of
> her modification. . . .  During the discussion,
> Defendant's representative asked Plaintiff when
> Plaintiff obtained the loan originally.  Plaintiff
> replied, "2006."  The representative then asked
> Plaintiff if she was black.  Plaintiff replied
> that yes, she is black.  Defendant's
> representative then told Plaintiff that she was
> not going to get a modification and that "those
> loans" were being sent to foreclosure.

Second Am. Compl. at ¶ 23.

On February 20, 2013, Defendant denied Plaintiff a loan modification due to "insufficient income,"[1] and in July 2013 Defendant denied Plaintiff a loan modification due to "surplus income."

At some point Defendant offered Plaintiff a repayment plan for up to 18 months that had payments nearly $800 per month higher than those of her original refinance loan.  Plaintiff "verbally rejected the repayment plan."

---

[1] It is unclear whether Plaintiff sought a loan modification to begin after April 2013 when the modification she obtained in 2010 ended or whether Plaintiff sought a modification of the modified loan.

On October 7, 2013, Defendant denied Plaintiff's application for loan modification "due to Plaintiff's failure to make all of the trial period payments under the higher-payment loan repayment plan."

On September 4, 2014, Defendant denied Plaintiff's application for a loan modification and advised Plaintiff that she "was allowed only one loan modification for the life of the loan."

At some point before May 16, 2014, Defendant initiated a nonjudicial foreclosure on Plaintiff's property. The sale was enjoined in February 2015 when Plaintiff obtained a preliminary injunction.[2]

On September 17, 2014, Plaintiff filed an action in Washington County Circuit Court against Defendant and Northwest Trustee Services, Inc. According to the parties the state court issued a limited judgment on March 26, 2015, as to Northwest Trustee Services pursuant to a stipulation by Plaintiff and Northwest Trustee.

On May 1, 2015, Plaintiff filed a second amended complaint in state court against Defendant asserting claims for unlawful discrimination in violation of Oregon Revised Statute § 659A.421; unfair trade practices in violation of Oregon Revised Statute

---

[2] Plaintiff does not identify the court that issued a preliminary injunction, but this Court infers the injunction was granted by the Washington County Circuit Court.

§ 646.607, *et seq.*; violation of the Equal Credit Opportunity Act
(ECOA), 15 U.S.C. § 1691; and violation of the Fair Housing Act
(FHA), 42 U.S.C. § 3605.

On June 10, 2015, Defendant filed a Motion to Dismiss
Plaintiff's Second Amended Complaint on the grounds that portions
of Plaintiff's claims are barred by the applicable statutes of
limitation and that Plaintiff failed to state claims for relief.
The Court took Defendant's Motion under advisement on August 10,
2015.

## STANDARDS

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as
> true, to "state a claim to relief that is
> plausible on its face." [*Bell Atlantic v.
> Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955. A
> claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to
> draw the reasonable inference that the defendant
> is liable for the misconduct alleged. *Id.* at 556.
> . . . The plausibility standard is not akin to a
> "probability requirement," but it asks for more
> than a sheer possibility that a defendant has
> acted unlawfully. *Ibid.* Where a complaint pleads
> facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line
> between possibility and plausibility of
> 'entitlement to relief.'" *Id*. at 557, 127 S. Ct.
> 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). *See also Bell
Atlantic*, 550 U.S. at 555-56. The court must accept as true the
allegations in the complaint and construe them in favor of the
plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

The pleading standard under Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *See also* Fed. R. Civ. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint also does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)(citation omitted). A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted).

## DISCUSSION

As noted, Defendant moves to dismiss all of Plaintiff's claims on the grounds that portions of Plaintiff's claims are barred by the applicable statutes of limitation and that

Plaintiff has failed to state a claim.

**I.  Portions of Plaintiff's claims are barred by the applicable statutes of limitation.**

As noted, Plaintiff brings claims for unlawful discrimination in violation of Oregon Revised Statute § 659A.421; unfair trade practices in violation of Oregon Revised Statute § 646.607, *et seq.*; violation of the ECOA; and violation of the FHA.  Defendant alleges portions of each of these claims are barred by the applicable statutes of limitations.

**A.  Plaintiff's claims under Oregon Revised Statute § 659A.421 and 42 U.S.C. § 3606.**

In her First Claim Plaintiff alleges Defendant violated § 659A.421(3) when it "discriminated against Plaintiff in making a transaction available, or in the terms or conditions of the transaction, because of Plaintiff's race."[3]  Second Am. Compl. at ¶ 27.  Similarly, in her Fourth Claim Plaintiff alleges Defendant violated § 3605 of the FHA "in refusing to give loan terms for which Plaintiff was qualified and other discriminatory conduct continuing as late as September 4, 2014."  Second Am. Compl. at ¶ 47.  It is unclear whether Plaintiff's claims for violation of § 659A.421 and the FHA rest on Defendant's conduct during the 2006 loan origination, Defendant's conduct related to the

_____

[3] The parties agree there is not any Oregon appellate decision interpreting Oregon Revised Statute § 659A.421(3) and that this Court, therefore, should look to federal authority related to the FHA when interpreting this Oregon statute.  The Court agrees.

repayment plan that Plaintiff rejected at an unspecified time, Defendant's conduct related to Plaintiff's unsuccessful attempts to obtain loan modifications, or some combination of those actions. Defendant contends to the extent that Plaintiff's claims relate to the 2006 loan origination or Defendant's rejections of Plaintiff's applications for loan modifications that occurred prior to September 17, 2012, those portions of Plaintiff's claims are time-barred.

Oregon Revised Statute § 659A.875(3) provides: "A civil action alleging a violation of ORS . . . 659A.421 must be commenced not later than two years after the occurrence or the termination of the unlawful practice." Similarly, the FHA provides: "An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). Plaintiff filed her complaint on September 17, 2014. Any portion of Plaintiff's claims under § 659A.421 and § 3601 that accrued before September 17, 2012, therefore, is time-barred.

Plaintiff asserts the Court should toll the statutes of limitations as to her claims under § 659A.421 and § 3605 of the FHA because the Defendant's course of conduct from 2006 through 2014 constitutes a continuing violation. In the alternative,

Plaintiff asserts her claims are timely even if the continuing-violation doctrine does not apply because the applicable limitations period does not begin to run until two years after termination of the "allegedly discriminatory housing practice," which, according to Plaintiff, did not occur until "on or around September 2014."

To support her continuing-violation theory Plaintiff relies on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). In *Havens* the Supreme Court noted under the FHA, as with other statutes, "continuing violation[s] of the Fair Housing Act should be treated differently from one discrete act of discrimination." *Id.* at 381. The Court noted when "a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely" when "the last asserted occurrence of that practice" occurs within the limitations period. *Id.* The Court, however, did not conclude the continuing-violations doctrine applied to all of the plaintiffs' FHA claims.

> Plainly the [neighborhood] claims, as currently alleged, are based not solely on isolated incidents involving the two respondents, but a continuing violation manifested in a number of incidents — including at least one (involving Coles) that is asserted to have occurred within the 180-day period. HOME, too, claims injury to its counseling and referral services not only from the incidents involving Coleman and Willis, but also from a continuing policy and practice of

>        unlawful racial steering that extends through the
>        last alleged incident.
>
>        We do not agree with the Court of Appeals,
>        however, that . . . respondent Coleman . . . may
>        take advantage of the "continuing violation"
>        theory.  Her tester claim is, in essence, that on
>        four isolated occasions she received false
>        information from petitioners in violation of
>        § 804(d) [of the FHA].

*Id.* at 381.  Accordingly, the Supreme Court affirmed the Court of

Appeals

>        insofar as the judgment reversed the District
>        Court's dismissal of the claims of Coleman and
>        Willis as individuals allegedly deprived of the
>        benefits of interracial association, and the
>        claims of HOME as an organization allegedly
>        injured by the racial steering practices of
>        petitioners

because those were deemed to be continuing pattern and practice

violations.  *Id*. at 382.  The Court reversed the Court of Appeals

"insofar as it directed that Coleman and Willis may proceed to

trial on their tester claims" because those were based on

discrete events rather than continuing violations.  *Id*.  Thus,

not all claims for violation of the FHA are continuing

violations.  As the Ninth Circuit has noted when determining

whether the continuing-violation doctrine applies, the court must

"'identify with care the specific [discriminatory] practice that

is at issue.'"  *Garcia v. Brockway*, 526 F.3d 456, 461 (9th Cir.

2008)(quoting *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S.

618 (2007)).

        Here there are two possible categories of violation:

offering the terms of the original loan and failing to provide
Plaintiff with loan modifications.  The former action occurred in
2006 when Plaintiff obtained the original loan from Defendant and
the latter actions allegedly occurred at various times between
2009 and 2014 (even though Plaintiff received a loan modification
in 2010).

In *National Railroad Passenger Corp. v. Morgan* the
Supreme Court analyzed the continuing-violation doctrine in the
context of a Title VII claim rather than an FHA claim.  536 U.S.
101 (2002).  When deciding housing-discrimination claims under
the FHA, however, the Ninth Circuit has frequently looked to
employment-discrimination claims for guidance.  *See, e.g., Cmty.
House, Inc. v. City of Boise*, 490 F.3d 1041, 1048 n.3 (9th Cir.
2007); *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir.
1997); *Pfaff v. U.S. Dep't of Hous. & Urban Dev.*, 88 F.3d 739,
745 n.1 (9th Cir. 1996).  The Court, therefore, looks to *Morgan*
for guidance.

When a plaintiff is alleging a disparate-treatment
claim, it is insufficient merely to allege discrimination as the
result of a practice that extends over time and through a series
of related acts when the "practice" remains divisible into a set
of discrete acts, each of which is individually actionable.
*Morgan,* 536 U.S. at 113-17.  In contrast, the Court noted when
the discriminatory practice consists of acts that are not

individually actionable, but rather become actionable based on the cumulative effects of repeated conduct occurring over a period of time, the continuing-violation doctrine may apply. *Id.* at 117 (plaintiff could base his hostile work environment claim on serial violations because "the entire hostile work environment encompasses a single unlawful employment practice"). The Supreme Court, elaborating on *Morgan,* has held the current effects of a prior discriminatory practice by themselves are insufficient to resuscitate prior acts of discrimination. *Ledbetter*, 550 U.S. at 628. Accordingly, if a plaintiff does not timely file charges for discrete acts of discrimination, subsequent nondiscriminatory acts that give effect to past discriminatory acts do not result in new violations.

Although the Ninth Circuit has not explicitly held *Morgan* limits the continuing-violation doctrine, it specifically noted the limiting effect of *Ledbetter* on the continuing-violation doctrine in *Garcia.* In *Garcia* the Ninth Circuit addressed the continuing-violation doctrine and the time when an alleged violation of the FHA terminates for purposes of § 3613. In *Garcia* the plaintiffs appealed the district court's determination that their FHA design-and-construction claims were barred by the two-year statute of limitations. Although the plaintiffs brought their action more than two years after the design and construction of their housing units was completed, the

plaintiffs asserted their claims were not time-barred under a continuing-violations theory and/or because under § 3613(a)(1)(A) an action may be brought two years after a violation is "terminated." According to the plaintiffs, "[w]ith respect to the design and construction requirements, complaints could be filed at any time that the building continues to be in noncompliance, because the discriminatory housing practice - failure to design and construct the building in compliance - does not terminate." *Garcia*, 526 F.3d at 462 (quotation omitted). The Court rejected the plaintiffs' argument.

> Plaintiffs and HUD confuse a continuing violation with the continuing effects of a past violation. "Termination" refers to "the termination of an alleged discriminatory housing practice." The Supreme Court has "stressed the need to identify with care the specific [discriminatory] practice that is at issue." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007). Here, the practice is "a failure to design and construct," which is not an indefinitely continuing practice, but a discrete instance of discrimination that terminates at the conclusion of the design-and-construction phase.

> * * *

> Put differently, "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981). The Supreme Court last term reiterated the distinction between a continuing violation and continual effects when it held that "current effects alone cannot breathe life into prior, unchanged discrimination; as we held in *Evans*, such effects in themselves have 'no present legal consequences.'" *Ledbetter*, 127 S. Ct. at 2169 (quoting *United Air Lines, Inc. v. Evans*, 431 U.S.

553, 558 (1977)).  Although the ill effects of a
failure to properly design and construct may
continue to be felt decades after construction is
complete, failing to design and construct is a
single instance of unlawful conduct.

*Id.* at 461.

Here it is undisputed that the negotiation for and
retention of Plaintiff's original loan from Defendant concluded
in 2006.  To the extent that Plaintiff's FHA and § 659A.421
claims are based on the 2006 loan origination and Plaintiff
asserts a violation continued to occur every time Plaintiff made
a payment under the original loan terms, Plaintiff confuses
"continu[ing] unlawful acts [with allegedly] continu[ing] ill
effects from an original violation."  Plaintiff's claim is
analogous to the "tester" claim in *Havens*, the discrete
discrimination claims raised in *Morgan*, and the building and
construction claims raised in *Garcia*.  As one court noted,
"[e]ven assuming that the loans violated plaintiffs' rights under
the FHA . . ., it did so directly, and the violation was complete
at the time the loan issued."  *Woodworth v. Bank of Am., Nat.
Ass'n*, No. 09-3058-CL, 2011 WL 1540358, at *14 (D. Or. Mar. 23,
2011).  As in *Havens, Morgan, Ledbetter*, and *Garcia*, the salient
point is that here the 2006 loan origination was independently
actionable when it was completed in 2006.  Any ongoing effect of
the allegedly violative terms of the 2006 loan origination "was
merely the manifestation of continued ill effects from the

original violation which alone had no present legal consequence and [cannot] resuscitate [Plaintiff's] claim." *Woodward*, 2011 WL 1540358, at *14 (citing *Garcia*, 526 F.3d at 462-63).

Plaintiff also relies on *Ramirez v. Greenpoint Mortgage Funding, Inc.*, 633 F. Supp.2d 922 (N.D. Cal. 2008), to support her assertion that her claims are not time-barred because she challenges a "pattern" of misconduct that continued into the limitations period. *Ramirez*, however, involved a disparate-impact claim relating to a class of consumers while this case involves a disparate-treatment claim related only to Plaintiff. *See Woodworth*, 2011 WL at *14 ("*Ramirez* involved a disparate impact claim, not a disparate treatment claim, and is therefore factually distinguishable from the facts of this case"). *Ramirez*, therefore, does not establish Plaintiff's claims in this case constitute continuing violations.

In addition, even if the 2006 loan origination was not a discrete event for purposes of the continuing-violation analysis, Plaintiff received and accepted a loan modification in April 2010 that ran through April 2013. Thus, Defendant's actions with regard to the 2006 loan origination were not a continuous course of conduct from 2006 through September 2014.

To the extent that Plaintiff's claims under the FHA and § 659A.421 rest on denials of Plaintiff's applications for loan modification that occurred before September 17, 2012, the

analysis is similar. Each denial of an application for loan modification was independently actionable when it was completed. In addition, Plaintiff does not allege with specificity any loan-modification application that Defendant denied before September 17, 2012. Although Plaintiff alleges generally that Defendant denied her applications for modification "seven times between January 2009 and September 2014" (Second Am. Compl. at ¶ 17), Plaintiff only alleges with specificity the denial of applications in February 2013, July 2013, October 2013, and September 2014, none of which are time-barred. Finally, to the extent that Plaintiff's claim rests on Defendant's conduct related to the repayment plan that Plaintiff rejected at some point, that occurred and "terminated" at the time Defendant offered and Plaintiff rejected the plan.

Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff's claims for violation of Oregon Revised Statute § 659A.421 and the FHA to the extent that those claims involve the 2006 loan origination; Plaintiff's modification applications denied before September 17, 2012; and/or the repayment plan that Plaintiff rejected to the extent that event occurred before September 17, 2012. The Court, therefore, dismisses with prejudice those portions of those claims on the ground that they are barred by the relevant statutes of limitations.

**B. Plaintiff's claim under the UTPA.**

In her Third Claim Plaintiff alleges Defendant violated the Oregon UTPA when it (1) "made false and misleading representations concerning the nature of the transaction or obligation . . . to Plaintiff when it originally informed Plaintiff at signing that, if she made timely payments for two years, she would be entitled to receive a modification with a lower interest rate" and (2) "denied each of Plaintiff's applications for loan modification after the initial two year period." Second Am. Compl. at ¶¶ 36, 38.

Oregon Revised Statute § 646.638(6) provides in pertinent part that an action must be brought under the UTPA "within one year after the discovery of the unlawful method, act or practice." As noted, Plaintiff filed this action on September 17, 2014. According to Defendant, therefore, any portion of Plaintiff's UTPA claim based on Defendant's conduct before September 17, 2013, is untimely. Plaintiff, in turn, asserts all of her Oregon UTPA claim is timely pursuant to the continuing-violations theory.

Plaintiff does not cite nor could this Court find a case in which an Oregon court applied the continuing-violation doctrine to toll the limitations period of the Oregon UTPA. Assuming without deciding that Oregon courts would permit the application of the continuing-violation theory in the context of

the Oregon UTPA, the Court concludes the continuing-violation doctrine does not apply to save that portion of Plaintiff's Oregon UTPA claim that rests on Defendant's actions prior to September 17, 2013.

Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff's claim for violation of the Oregon UTPA to the extent that claim involves the 2006 loan origination and/or Plaintiff's modification applications that Defendant denied before September 17, 2013. The Court, therefore, dismisses with prejudice that portion of Plaintiff's UTPA claim on the ground that it is barred by the relevant statute of limitations.

**C. Plaintiff's claim under the ECOA.**

In her Fifth Claim Plaintiff alleges Defendant violated the ECOA when it "discriminated against Plaintiff with respect to a credit transaction because of Plaintiff's race." Second Am. Compl. at ¶ 50. Plaintiff does not make clear either in her Second Amended Complaint nor in her Response to Defendant's Motion to Dismiss whether her claim for violation of the ECOA rests on Defendant's conduct related to the 2006 loan origination, the repayment plan that Plaintiff rejected, or Plaintiff's unsuccessful attempts to obtain loan modifications, or some combination of those issues. Defendant contends to the extent that Plaintiff's claims relate to the 2006 loan origination or Defendant's rejections of Plaintiff's applications

for loan modifications that occurred prior to September 17, 2009,
those portions of Plaintiff's claim are time-barred.  Plaintiff,
in turn, asserts all of her ECOA claim is timely under the
continuing-violations theory.

The ECOA currently provides actions brought under that
statute must be commenced within "5 years after the date of
occurrence of the violation."  15 U.S.C. § 1691e(f).  At the time
of the 2006 loan origination, however, the ECOA contained a two-
year limitations period.  15 U.S.C. § 1691e(f)(2010), *amended by*
Dodd-Frank Wall Street Reform and Consumer Protection Act
(Dodd-Frank Act), Pub.L. No. 111-203, 124 Stat. 1376 (2010).
Courts have held Congress did not clearly manifest an intent for
the longer limitations period enacted in July 2010 to apply
retroactively, and, therefore, the two-year limitations period
applies to claims that accrued before July 2010.  *See, e.g.,*
*Empire Bank v. Dumond*, No. 13-CV-0388-CVE-PJC, 2013 WL 6238605,
at *3 (N.D. Okla. Dec. 3, 2013).

Courts in this district have held the continuing-violation
doctrine applies to actions pursuant to the ECOA when the
parameters for that doctrine are satisfied.  *See, e.g.,*
*Subramaniam v. Beal*, No. 3:12-CV-01681-MO, 2013 WL 5462339, at
*10-*11 (D. Or. Sept. 27, 2013); *Woodworth*, 2011 WL 1540358, at
*12-*13.

Plaintiff does not specify in her Second Amended Complaint

nor in her Response to Defendant's Motion whether her ECOA claim rests on Defendant's conduct related to the 2006 loan origination, the repayment plan that Plaintiff rejected at some point, or Plaintiff's various applications for loan modifications. As noted, however, Plaintiff asserts all of her claims should be deemed timely under the continuing-violations doctrine.

For the same reasons that the Court concluded the continuing-violations doctrine does not apply to Plaintiff's claims under the FHA, the Court concludes it does not apply to Plaintiff's claims under the ECOA. In short, Plaintiff has not established Defendant's actions are a continuing-violation rather than a series of discrete acts, each of which became actionable at the time they occurred. The Court, therefore, concludes the continuing-doctrine does not apply to save those portions of Plaintiff's ECOA claim that rest on the 2006 loan origination; on Defendant's conduct related to the repayment plan that Plaintiff rejected to the extent that it occurred before September 17, 2009; or on Defendant's actions prior to September 17, 2009.

Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff's claim for violation of the ECOA to the extent that claim involves the 2006 loan origination; Plaintiff's modification applications denied before September 17, 2009; and/or the repayment plan that Plaintiff rejected to the extent

that it occurred before September 17, 2009.  The Court,
therefore, dismisses with prejudice those portions of Plaintiff's
ECOA claim on the ground that they are barred by the relevant
statute of limitations.

## III. Plaintiff fails to state claims for violation of § 659A.421, the FHA, the UPTA, and the ECOA.

To the extent that Plaintiff's claims are not time-barred,
Defendant asserts Plaintiff fails to state claims adequately for
violation of § 659A.421(3), the FHA, Oregon UTPA, and the ECOA.

### A.    Plaintiff's claims for violation of § 659A.421(3) and the FHA.

Oregon Revised Statute § 659A.421(3)(a) provides in
pertinent part:  "A person whose business includes engaging in
residential real estate related transactions may not discriminate
against any person in making a transaction available, or in the
terms or conditions of the transaction, because of race."
Section 3605(a) of the FHA provides in pertinent part:  "It shall
be unlawful for any person or other entity whose business
includes engaging in residential real estate-related transactions
to discriminate against any person in making available such a
transaction, or in the terms or conditions of such a transaction,
because of race."  As noted, there is not any Oregon appellate
decision interpreting Oregon Revised Statute § 659A.421(3).  This
Court, therefore, looks to federal authority related to the FHA
and other federal discrimination statutes to interpret

§ 659A.421(3)(a).

To state a *prima facie* claim for disparate treatment under the FHA and § 659A.421(3), Plaintiff must allege:

> (1) [she was] a member of a protected class;
> (2) [she] attempted to engage in a "real estate-related transaction" with [Defendant], and met all relevant qualifications for doing so;
> (3) [Defendant] refused to transact business with [Plaintiff] despite [her] qualifications; and
> (4) [Defendant] continued to engage in that type of transaction with other parties with similar qualifications.

*Bojorquez v. Wells Fargo Bank, NA*, No. 6:12-CV-02077-AA, 2013 WL 6055258, at *6 (D. Or. Nov. 7, 2013)(quotation omitted). Plaintiff must also plead Defendant refused to transact business with Plaintiff because of her race.

As noted, Plaintiff alleges in her Second Amended Complaint that Defendant violated § 659A.421(3) when it "discriminated against Plaintiff in making a transaction available, or in the terms or conditions of the transaction, because of Plaintiff's race." Second Am. Compl. at ¶ 27. Plaintiff alleges Defendant violated § 3605 of the FHA "in refusing to give loan terms for which Plaintiff was qualified and other discriminatory conduct continuing as late as September 4, 2014." Second Am. Compl. at ¶ 47. With respect to Defendant's actions after the relevant statute of limitations expired (September 17, 2012), Plaintiff specifically alleges Defendant denied her applications for loan modifications on February 20,

2013; July 15, 2013; October 7, 2013; and September 4, 2014.
Plaintiff appears to assert in her Response that Defendant's
various reasons for its denials were merely pretextual.
Plaintiff also alleges she had a telephone exchange with
Defendant's representative in the first half of 2013 in which the
representative asked Plaintiff if she was black and then told her
that she was "not going to get a modification and that those
loans were being sent to foreclosure."

It is questionable whether Plaintiff's single
allegation of the telephone conversation in which Defendant's
representative asked her if she was black is sufficient to allege
that Defendant refused to offer Plaintiff a loan modification
from February 2013 through September 2014 on that basis.  Even if
the Court, however, accepted that allegation as sufficient, the
Court notes Plaintiff's Second Amended Complaint, viewed in the
light most favorable to Plaintiff, does not contain any
allegation that Plaintiff "met all relevant qualifications" for a
loan modification or that Defendant "continued to engage in that
type of transaction with other parties with similar
qualifications."  Plaintiff also does not plead any facts to
support an inference that she met all relevant qualifications for
a loan modification or that Defendant continued to engage in
those kinds of transactions with other parties with similar
qualifications.  Plaintiff makes these kinds of allegations

related to the 2006 loan origination, but that portion of her claim is foreclosed as untimely and the allegations related to that transaction are not repeated as to Plaintiff's requests for loan modifications.

Plaintiff also alleges Defendant offered Plaintiff a repayment plan at some point, but the payments were "almost $800 per month higher than those of her original loan" and Plaintiff, therefore, rejected Defendant's offer. Plaintiff, however, fails to plead when this offer occurred, that she "met all relevant qualifications" for a lower repayment interest rate or a lower payment amount, or that Defendant offered lower repayment rates or payment amounts to other parties with similar qualifications. Finally, Plaintiff does not plead any facts to support an inference that she met all relevant qualifications for a repayment plan that had either a lower rate or lower payments or that Defendant continued to engage in that kind of transaction with other parties with similar qualifications

The Court, therefore, concludes Plaintiff has failed to state a claim for those portions of her claims for violation of Oregon Revised Statute § 659A.421(3) and § 3605 of the FHA that are not barred by the relevant statutes of limitations.

Accordingly, the Court grants Defendant's Motion to Dismiss those timely portions of Plaintiff's claims for violation of Oregon Revised Statute § 659A.421(3) and § 3605 of the FHA for

failure to state a claim.

**B.   Plaintiff's UTPA claim.**

The UTPA allows a private right of action for persons who have suffered an "ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608."  Or. Rev. Stat. § 646.638(1).

To state a claim under the UTPA Plaintiff must allege: (1) a violation of § 646.608(1), (2) causation, (3) damages, and (4) willfulness by Defendant.  *See Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1139 (D. Or. 2014).  *See also Feitler v. Animation Celection, Inc.*, 170 Or. App. 702, 708 (2000). Plaintiff does not specify in her Second Amended Complaint which of the 77 possible violations of the UTPA set out in Oregon Revised Statute § 646.608(1) that Defendant allegedly violated. This alone makes analysis of Plaintiff's UTPA claim difficult. In addition, Plaintiff does not specifically plead willfulness by Defendant with respect to that portion of her UTPA claim that is timely (*i.e.*, Defendant's denial of Plaintiff's applications for loan modification that occurred after September 17, 2013, and Defendant's offer of a repayment plan with higher payments to the extent that the offer occurred after September 17, 2013).  "A willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a

violation." Or. Rev. Stat. § 646.605(10).

Plaintiff points out in her Response that a court in this district has concluded

> factual allegations offered in support of a UTPA claim must somehow suggest the defendant acted willfully at the time of the misrepresentation, *perhaps by alleging misconduct so inconsistent with the defendant's original promise that the court could reasonably infer the defendant did not intend to comply with her promises at the time they were made.*

*McKie v. Sears Protection Co.*, No. 10-1531-PK, 2011 WL 1587103, at *2 (D. Or. Apr. 26, 2011)(emphasis added). As noted, Plaintiff alleges Defendant told Plaintiff during the 2006 loan origination that "if she made timely payments for two years, she would be entitled to receive a modification with a lower interest rate." Plaintiff alleges she made timely payments for two years and Defendant denied many of Plaintiff's applications for loan modification after the two years expired. Plaintiff asserts these facts sufficiently allege misconduct by Defendant that is "so inconsistent with [Defendant's] original promise" that an inference of willfulness is reasonable.

Plaintiff's argument is unpersuasive because in addition to these allegations, Plaintiff also alleges in her Second Amended Complaint that she, in fact, received a loan modification from Defendant and that her interest rate was lowered from April 2010 to April 2013. According to Plaintiff's own allegations, therefore, Defendant advised Plaintiff in 2006

that she would be eligible for a loan modification with a lower interest rate if she made timely payments for two years, Plaintiff made timely payments for two years, and Defendant gave Plaintiff a loan modification with a lower interest rate. The Court cannot reasonably infer from the allegations in Plaintiff's Second Amended Complaint that Defendant acted so inconsistently with its statement to Plaintiff during the 2006 loan modification that Defendant's conduct in denying Plaintiff's other applications for loan modification or in offering her a second repayment plan with higher payments was willful conduct within the meaning of the UTPA.

Accordingly, the Court grants Defendant's Motion to Dismiss as to the portion of Plaintiff's UTPA claim that is timely for failure to state a claim.

**C. Plaintiff's ECOA claim.**

15 U.S.C. § 1691(a)(1) prohibits a creditor from discriminating against any applicant "with respect to any aspect of a credit transaction on the basis of race." To state a claim for violation of the ECOA Plaintiff must allege she "(1) is a member of a protected class; (2) applied for credit; (3) was qualified for credit; and (4) was denied credit, despite being qualified." *Blair v. Bank of Am., N.A.*, No. 10-CV-946-SI, 2012 WL 860411, at *12 (D. Or. Mar. 13, 2012)(citation omitted).

Plaintiff's ECOA claim may not be sustained as to her

2006 loan origination because that portion of her claim is untimely. With respect to that portion of her ECOA claim related to Defendant's denials of her modification applications from February 2013 through September 2014, Plaintiff fails to allege she was qualified to receive those modifications or to allege any facts from which the Court could infer Plaintiff was qualified to receive those modifications. The only factual allegations in Plaintiff's Second Amended Complaint related to Plaintiff's creditworthiness relate to her credit score, income, and employment at the time of the 2006 loan origination. Plaintiff's Second Amended Complaint does not contain factual allegations related to any factors that might determine the creditworthiness of Plaintiff at the time of her modification applications. In addition, Plaintiff received a loan modification from April 2010 to April 2013 that reduced the interest rate on her loan. Accordingly, during that time the Court cannot infer Plaintiff was denied credit. The Court, therefore, concludes Plaintiff has not stated a claim for violation of the ECOA as to that portion of her ECOA claim that is timely.

Accordingly, the Court grants Defendant's Motion to Dismiss that portion of Plaintiff's ECOA claim that is timely for failure to state a claim.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion (#8) to Dismiss Plaintiff's Second Amended Complaint. The Court **DISMISSES with prejudice** those portions of Plaintiff's claims that are time-barred by the relevant statutes of limitation as set out in this Opinion and Order. The Court also **DISMISSES without prejudice** the remainder of Plaintiff's claims that are not time-barred. The Court, however, grants Plaintiff leave to file a Third Amended Complaint **no later than October 28, 2015,** to cure the defects set out in this Opinion and Order as to the remainder of Plaintiff's claims that are not time-barred. The Court advises Plaintiff that leave to amend is not given to allege new or different claims based on the same facts.

IT IS SO ORDERED.

DATED this 9th day of October, 2015.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge